**In re SPELMAN. BANK OF STURGEON v. STEWART. SPELMAN v. SAME.**

(District Court, W. D. Missouri, C. D. June 1, 1926.)

No. 926.

**Bankruptcy ⚮161(1)—Intentional delay in filing voluntary petition until expiration of four months after giving security to favored creditors held fraud, requiring petition to be regarded as filed within the four months.**

Bankrupt, a farmer, gave security to two creditors. Shortly afterward he determined to file a voluntary petition in bankruptcy, but in accordance with an understanding with such two creditors, and for the express purpose of not impairing their security, he deferred filing his petition until the expiration of four months after it was given. *Held,* that such action was a use of the Bankruptcy Law for the purpose of defrauding his unsecured creditors, and that the court, as a court of equity, would regard the petition as having been filed, as it should have been, within the four months.

In Bankruptcy. In the matter of Samuel Spelman, bankrupt. On review of an order of the referee on the claims of the Bank of Sturgeon and John Spelman, opposed by E. S. Stewart, trustee. Reversed.

N. T. Gentry, of Jefferson City, Mo., and J. P. McBaine and Boyle G. Clark, both of Columbia, Mo., for claimants.

Don C. Carter, of Sturgeon, Mo., for creditors.

J. M. Johnson, of Kansas City, Mo., for trustee.

REEVES, District Judge. The two claims of John Spelman and Bank of Sturgeon may be considered together in this memorandum opinion. The facts appear to be practically identical. The bankrupt is a farmer, who filed his petition on October 19, 1925. More than four months prior thereto he had secured his indebtedness to the claimants. This security was given to the Bank of Sturgeon June 8, 1925, and a day or two thereafter Mr. Spelman was given security on his claim. Shortly after these transactions the debtor determined upon bankruptcy. Under the law, an involuntary petition in bankruptcy could not be filed against him. This fact was known and discussed by his creditors, to whom he had given the preferences. An understanding was had among them that a voluntary proceeding in bankruptcy should be deferred until more than four months had elapsed from the execution of the preferences.

Acting upon this arrangement, the bankrupt waited until the expiry of four months and then filed his petition in bankruptcy. In the meantime other creditors were powerless to protect themselves against this preference. By this arrangement the bankrupt made a distribution of his property according to his own pleasure, with a purpose to obtain a discharge from the claims of all persons he might not choose to prefer. The bankrupt, in doing this, used the Bankruptcy Law to perpetrate a patent fraud upon his unsecured creditors. Under the state law he could prefer his creditors, and it was his right voluntarily to use the benefits of the Bankruptcy Law; but he could not use the Bankruptcy Law in such manner as to work an actual fraud upon a portion of his creditors.

It is argued that the circumstances disclose a wrong which cannot be remedied under the law. The proceeding in bankruptcy is of an equitable nature, and equity will not suffer a wrong to be without a remedy. To make effective application of this doctrine, the court must apply another maxim of equity which regards that as done which ought to be done. When the bankrupt determined upon bankruptcy in July, 1925, within a few weeks after he had given the preferences, it was then his duty immediately to file his petition. He purposed then to use the benefits of the Bankruptcy Law. Immediately upon such determination, fairness to all his creditors demanded that he act without delay. The only excuse he gave for not so acting at that time was that his preferences could be invalidated. The last-mentioned maxim should be applied to defeat what would otherwise operate as a fraud.

For the purposes of this proceeding it must be held that bankruptcy was actually begun within the four months after the preferences, and the same, having been given for antecedent debts, were void in law. The findings and order of the referee will therefore be reversed.